Timothy KURETICH, Sr., Appellant,

v.

ALASKA TRUSTEE, LLC, Stephen Routh, and PHH Mortgage Corporation, Appellees.

No. S–14196.

Supreme Court of Alaska.

Sept. 14, 2012.

James J. Davis, Jr., Chelsea C. Hicks, and Robert P. Lynch, Alaska Legal Services Corporation, Anchorage, for Appellant.

Richard Ullstrom, Routh Crabtree Olsen, PS, Anchorage, for Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

A homeowner sought a declaratory judgment that foreclosure fees were not properly included in the reinstatement amount necessary to halt foreclosure proceedings under Alaska law. The superior court concluded that the foreclosure fees were properly in-

cluded in the reinstatement amount. We agree and therefore affirm.

## II. FACTS AND PROCEEDINGS

Timothy Kuretich purchased his home in 2001 and financed this purchase through a promissory note and deed of trust with PHH Mortgage Corporation. In 2008, Kuretich fell behind on his mortgage payments and PHH Mortgage authorized Alaska Trustee, LLC to begin foreclosure. Kuretich paid the reinstatement amount provided by Alaska Trustee, including foreclosure fees and expenses. In early 2009, Kuretich again fell behind on his payments and Alaska Trustee again began the foreclosure process. This time, Kuretich sought counsel before requesting a reinstatement amount. When Alaska Trustee provided a reinstatement amount that contained its foreclosure fees and costs, Kuretich refused to pay the full amount and brought this suit.

Kuretich alleged that Alaska Trustee had violated AS 34.20.070(b) (Alaska's non-judicial foreclosure statute), federal regulations, and Alaska's Unfair Trade Practices and Consumer Protection Act (UTPCPA) by including foreclosure fees and costs in the reinstatement amount. The superior court granted a preliminary injunction in September 2009, delaying the foreclosure sale. In October 2009, PHH Mortgage and Kuretich entered into a loan modification agreement, which terminated foreclosure and reinstated the mortgage. Kuretich continued the litigation to pursue a declaratory judgment and the superior court granted summary judgment for Alaska Trustee in December 2010. This appeal followed.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo, drawing all reasonable inferences in favor of the party against whom summary judgment is granted.[1] The grant

will be upheld if there is no genuine issue of material fact.[2] We may affirm the grant of summary judgment on any grounds discerned from the record, even grounds not asserted by the trial court or parties.[3]

"We apply our independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy."[4] Statutory interpretation is a question of law that requires our independent judgment.[5] We will interpret a statute "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[6]

## IV. DISCUSSION

Kuretich challenges the superior court's conclusion that Alaska Trustee could add various fees and charges to Kuretich's reinstatement amount even though those fees were not sums "in default" under Kuretich's reading of AS 34.20.070(b). Alaska Trustee, arguing that Kuretich improperly changed his argument on appeal, encourages us to affirm the superior court on two alternate grounds: (1) federal housing regulations allowed for collection of the disputed fees, and because this loan was secured by HUD, federal law preempted any contrary requirements under the state statute, AS 34.20.070(b); and (2) the UTPCPA does not apply to non-judicial foreclosures and Kuretich has no standing to sue for damages or injunctive relief under that statute.

Superior Court Judge Andrew Guidi concluded that "Alaska Trustee's inclusion of foreclosure fees and costs in plaintiff's reinstatement quote, as permitted by the parties' deed of trust, is consistent with Alaska's non-judicial foreclosure statute, AS 34.20.070." We agree.

1. *Kiernan v. Creech*, 268 P.3d 312, 315 (Alaska 2012).

2. *Id.*

3. *Id.* at 319; *Moore v. Allstate Ins. Co.*, 995 P.2d 231, 233 (Alaska 2000).

4. *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 177 P.3d 1181, 1184 (Alaska 2008) (internal citations omitted).

5. *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008).

6. *Id.*

Alaska Statute 34.20.070(b) provides that a borrower can halt non-judicial foreclosure and cure the default "by payment of the sum in default other than the principal that would not then be due if no default had occurred, plus attorney fees or court costs actually incurred by the trustee." The central dispute in this case concerns what costs a lender, or its foreclosure beneficiary, may include in the reinstatement amount as the "sum in default."

The only case in which we have considered this portion of the statute is *Hagberg v. Alaska National Bank.*[7] In that case, we held that an amendment to AS 34.20.070 providing for reinstatement did not violate the contract clause of the Constitution, even when applied to deeds of trust executed before the amendment's effective date.[8] In doing so, we reasoned that reinstatement affected only the lender's ability to accelerate the loan, not the value of the right itself, because the function of reinstatement is to place the lender and borrower in the same position as they were before default.[9] The *Hagberg* court noted that an obligor may halt non-judicial foreclosure by "paying costs and by bringing his payments current," but did not specify which costs could be included.[10] In this case the superior court correctly noted, however, that "[o]nly by allowing recovery of these [foreclosure] fees will the value of the lender's rights be preserved and the parties returned to their status quo prior to the default."

The superior court also interpreted AS 34.20.070 as deferring to the terms and conditions contained in the deed of trust to govern the lender's and borrower's rights upon foreclosure. The superior court noted

that the deed of trust in this case "specifically delineates the reinstatement amount as including costs of foreclosure not limited to attorney fees." Thus, the costs incident to foreclosure were properly included within the sum in default in this case by the express terms of the deed signed by the parties. Because the court's decision correctly granted summary judgment for Alaska Trustee, we adopt the superior court's decision, attached as an appendix.[11]

## V. CONCLUSION

For the reasons stated above and in the attached opinion of the superior court, we AFFIRM the grant of summary judgment for Alaska Trustee.

CHRISTEN, Justice, not participating.

## APPENDIX

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## THIRD JUDICIAL DISTRICT AT ANCHORAGE

Timothy KURETICH, Sr., Plaintiff,

v.

ALASKA TRUSTEE, LLC, Stephen Routh, and PHH Mortgage Corporation, Defendant.

Case No. 3AN–09–10371 CI

### ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT *

On June 4, 2010, plaintiff Timothy Kuretich, Sr., filed a motion for summary judgment urging the Court to narrowly define the

7. 585 P.2d 559 (Alaska 1978).

8. *Id.* at 561.

9. *Id.* at 562.

10. *Id.*

11. The only issue raised on appeal that was not addressed by the superior court is whether Kuretich has impermissibly changed his argument on appeal thereby waiving his claim that "the foreclosure expenses included in the reinstatement quote were not actually 'in default' because no demand for payment of them had been made."

We believe that Kuretich did not change his argument on appeal, but rather maintained his same argument throughout the entire course of proceedings, principally that foreclosure fees are not properly included in the reinstatement amount under *any section* of 34.20.070(b). Accordingly, we reject Alaska Trustee's assertion.

Finally, having upheld the superior court's grant of summary judgment on the grounds on which it was issued, we have no need to consider Alaska Trustee's alternate bases for upholding the grant of summary judgment.

* This decision has been edited to conform to the technical rules of the Alaska Supreme Court.

costs and fees included in the reinstatement amount, or "sum in default", under AS 35.20.070, Alaska's non-judicial foreclosure statute. Defendant Alaska Trustee opposed the motion and moved for summary judgment as to Counts I and III of the plaintiff's Third Amended Complaint.[1] The Court considers the motions and the parties' arguments here.

## I. FACTUAL BACKGROUND

In June 2001, plaintiff Timothy Kuretich, Sr., executed a deed of trust with Premier Mortgage in the amount of $111,122.00 to secure the balance due on a note for purchase of the property at issue in this case. In March 2009, plaintiff defaulted on his mortgage. As a result, PHH Mortgage accelerated the debt and authorized Alaska Trustee to commence foreclosure proceedings as the trustee of the deed of trust.[2] In June 2009, Alaska Trustee recorded a Notice of Default in Palmer, citing plaintiff's failure to "pay the indebtedness due under the Deed of Trust, $115,495.88, plus interest, late charges, costs, and any future advances" and setting September 28, 2009 as the date of sale. Upon request by plaintiff's counsel, Alaska Trustee provided a reinstatement quote totaling $11,479.28. The quote provided by Alaska Trustee reflects:

1. $8,845.27 in payments due to PHH Mortgage;

2. $146.44 in accrued late fees;

3. $200 for a broker's price opinion;

4. $13.25 for drive-by inspections;

5. $26.50 for other fees incurred by PHH Mortgage;

6. Alaska Trustee's fee of $1250

7. $630 paid to First American Title for the trustee's sale guarantee;

8. $44 for recording documents in the real property records ($22 for recording the Notice of Default, and $22 for recording the termination notice should the loan reinstate and the foreclosure be terminated);

9. $72.02 for certified mail postage for mailing the Notice of Default;

10. $45 paid to the property poster for posting the Notice of Default on the property; and

11. $206.80 for publication of the foreclosure sale notice in the Alaska Journal of Commerce.[3]

The sale date was subsequently postponed to November 18, 2009. However, as a result of the completed loan modification, the sale was terminated by Alaska Trustee at PHH Mortgage's request on October 29, 2009. The parties now seek a declaration from the Court on the permissible costs and fees of reinstatement. The issue is capable of reoccurrence between the parties.

Plaintiff asserts that he should be able to reinstate the terms of his mortgage for the amount of mortgage payments missed plus late fees, i.e., $8,990.00, rather than for the $11,479.28 reinstatement figure produced by Alaska Trustee. Plaintiff argues that defendant Alaska Trustee should not be allowed to—in his words—"pad" a reinstatement quote with fees and costs that are not "attorney fees or court costs" as expressly authorized by statute. Alaska Trustee argues the costs of reinstatement were actually and necessarily incurred, not padding, and the reinstatement quote it provided to plaintiff properly identified the "sum in default" according

1. Count I of Plaintiff's Third Amended Complaint alleges violation of the Unfair. Trade Practices and Consumer Protection Act by including "unlawful fees" in the reinstatement amount "that exceed those provided for in AS 34.20.070(b)." In Count III, plaintiff seeks a declaration from this Court holding that under AS 34.20.070(b), "attorney fees" and "court costs" do not include fees for inspections, appraisals, title reports, recording, certified mailings, property posting, public posting, publication, postponements, and other fees. Plaintiff also seeks injunctive relief and requests the Court "declare void and set aside any and all non-judicial foreclosure sales

that defendants have conducted in the past two years, and may conduct in the future, where they have told homeowners that they must first pay it[s] excessive or unlawful reinstatement amounts in order to cure their mortgage default."

2. Alaska Trustee had been substituted as the trustee of the deed of trust during a previous foreclosure in 200[8]. Plaintiff was able to cure the default and halt foreclosure in 200[8].

3. Affidavit of Rose Santiago, June 25, 2010.

to the terms of the note and deed of trust. Both parties have moved for summary judgment on this point of law.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.[4] To prevail on his motion, plaintiff bears the initial burden of proving the absence of a genuine factual dispute and the legal right to a judgment.[5] The "Court is not bound by the formal issues framed in the pleadings when deciding a motion for summary judgment under Rule 56."[6] Instead, the Court "will examine the pleadings to ascertain what issues of fact they present and then consider the affidavits, depositions, admissions, answers to interrogatories and similar material to determine whether any of these issues are real and genuine and whether any of the post-pleading material suggests the existence of any other triable genuine issues of material fact."[7]

The relevant facts of this case are largely undisputed; the parties' dispute instead is centered on the interpretation of Alaska's non judicial foreclosure statute. Accordingly, the legal questions before the Court are appropriate for summary judgment.

## III. LEGAL ARGUMENT

In Alaska, lenders have three choices of remedy when a borrower defaults on a deed of trust: (1) judicial foreclosure; (2) suing on the note secured by the deed of trust; or (3) non-judicial foreclosure. Judicial foreclosures are processed through the courts and require the lender to file a complaint and record a notice of *lis pendens*. If the court finds the debt valid, and in default, it will issue judgment for the total amount owed including the costs of the foreclosure process, and a court-ordered foreclosure sale will follow. Upon sale of the foreclosed property, the lender can obtain a deficiency judgment against the borrower for amounts still owed after the sale.[8] The defaulting borrower has a right to redeem the property if within twelve (12) months after the judicial foreclosure sale the borrower pays the sale price (plus 8% per annum) and costs incurred in the sale.[9]

Lenders may also sue on the note secured by the deed of trust if it reserves the right to do so in the note. If the lender, or beneficiary, pursues judicial foreclosure or sues on the note and a court judgment is obtained, "the beneficiary may not exercise the non-judicial remedies."[10]

Non-judicial foreclosures are processed without court intervention, and may be pursued by the lender only if authorized by the deed of trust.[11] Upon default, the lender or its trustee must record a notice of default reflecting the nature of the default and the sum of the obligation owed and deliver a copy of the notice to the borrower. The borrower does not have the statutory right of redemption provided for in judicial foreclosures, but has an equitable right to redeem the property and halt foreclosure by curing the default.[12] If the default is not cured, the lender holds a foreclosure sale. Because Alaska prohibits the lender from pursuing a deficiency judgment after a non-judicial foreclosure, the lender's remedy is limited to the value of the property at the foreclosure sale.[13]

---

4. *Cikan v. ARCO Alaska, Inc.*, 125 P.3d 335, 339 (Alaska 2005).

5. *Philbin v. Matanuska–Susitna Borough*, 991 P.2d 1263, 1265 (Alaska 1999).

6. *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 582 (Alaska 2007).

7. *Jennings v. State*, 566 P.2d 1304, 1310 (Alaska 1977) (quoting 10 C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2721, at 475–76 (1973)).

8. *See Hull v. Alaska Fed. Sav. & Loan Ass'n*, 658 P.2d 122 (Alaska 1983).

9. AS 09.35.250.

10. AS 34.20.070(a).

11. *Id.*

12. AS 34.20.070(b).

13. AS 34.20.100.

The language of the statute at issue in this case, AS 34.20.070(b), establishes the procedure by which the borrower can halt non-judicial foreclosure:

> At any time before the sale, if the default has arisen by failure to make payments required by the trust deed, the default may be cured by payment of the *sum in default* other than the principal that would not then be due if no default had occurred, plus attorney fees or court costs actually incurred by the trustee due to the default.

(Emphasis added). Plaintiff emphasizes that AS 34.20.070(b) allows the addition of only "attorney fees or court costs" and argues these terms cannot plausibly include any costs other than what their plain meaning delineates—attorney's fees and costs incurred in a court proceeding or defined by the Civil Rules. Plaintiff does not argue that the fees included in his reinstatement amount are excessive or unreasonable, nor does he argue that the fees were not actually incurred. Instead, plaintiff simply argues the fees were not explicitly authorized by statute and therefore cannot be demanded as a condition of reinstatement under AS 34.20.070(b).

## A. Statutory Interpretation Of AS 34.20.070

Plaintiff urges a strict statutory interpretation of Alaska's non-judicial foreclosure statute. According to plaintiff, the only sums the lender can require as a condition to reinstatement are (1) the "sum in default," (2) attorney's fees, and (3) court costs. Plaintiff goes to great lengths to rationalize an interpretation which only allows for recovery of attorney's fees and court costs in a *non-judicial* foreclosure. However, after considering the parties' arguments the Court must interpret Alaska law "according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters."[14]

### 1. Attorney's fees and court costs

Plaintiff argues that attorney's fees are available in a non-judicial foreclosure only when attorneys are hired to perform the foreclosure, and "court costs" can also be recovered if they are within the costs defined in Civil Rule 79(f). Plaintiff's interpretation of "court costs" is supported by Judge Gleason's decision in *Bachmeier v. Alaska Trustee, LLC et al.*[15] On the record, Judge Gleason stated that "court costs" are defined "more broadly than costs incurred in court" and "include costs that would be recoverable under Rule 79."[16] While Rule 79 allows for recovery of costs not normally thought to be *literally* incurred in court, such as the costs of publishing notices and the costs of copying, these costs are only obtained by the prevailing party in a court proceeding. Even if the legislature intended to extend the costs defined in Rule 79 to a non-judicial matter, the costs that commonly attend a non-judicial foreclosure—e.g., recording fees and the costs of title searches—would be excluded.

Plaintiff devotes a significant portion of [his] brief disputing the notion that the lender's costs and fees in this case constitute "attorney fees or court costs" within the meaning of the statute. Plaintiff's contention that attorneys' fees can only be recovered in a non-judicial foreclosure if a foreclosing lender hires attorneys to perform the foreclosure seems to the Court an arbitrary distinction. Alaska Trustee does not dispute this point and agrees that the costs of reinstatement it sought from plaintiff are not within the plain meaning of "attorney fees or court costs." Instead, Alaska Trustee argues its costs or fees are recoverable as the "sum in default."

### 2. The "sum in default"

The central dispute in this case is what costs a lender, or its beneficiary, may include in the reinstatement amount, or "sum in de-

---

**14.** *Young v. Embley,* 143 P.3d 936, 939 (Alaska 2006) (quoting *Native Vil. of Elim v. State,* 990 P.2d 1, 5 (Alaska 1999)).

**15.** No. 3AN–09–08695 CI (Alaska, Super., June 8, 2010).

**16.** Exhibit 6 to Certificate of Chelsea Hicks in Support of Plaintiff's Motion for Partial Summary Judgment, pg. 46.

fault." Plaintiff argues interpreting "sum in default" so as to include foreclosure fees and costs incurred by the beneficiary would render "wholly superfluous the two recoverable fees that the legislature specifically enumerated."[17] According to plaintiff, "[t]here would be no reason for the Alaska Legislature to specifically allow for 'attorney fees' and 'court costs' to be included in the reinstatement amount if such fees and costs already constituted part of the 'sum in default.'"[18] Alaska Trustee does not argue that attorney fees and court costs are part of the sum in default. Instead, Alaska Trustee argues the sum in default necessarily includes the other costs of a non-judicial foreclosure incurred by the lender and its beneficiary.

In *Hagberg v. Alaska National Bank,*[19] the Alaska Supreme Court considered whether a recent amendment to AS 34.20.070 authorizing the right to reinstatement violated the contract clause of the Constitution.[20] *Hagberg* is the first and only reported Alaska Supreme Court decision to analyze the portion of the non-judicial foreclosure statute pertinent to the case at hand.[21] The lender in *Hagberg* argued that it had no duty to apply the amendment, i.e., the right to reinstatement, to a deed of trust executed before the amendment's effective date because the amendment's impact upon a lender's contract remedy of accelerating principal due upon a borrower's default violated the contract clause. The Court held that the amendment did not violate the contract clause because the change in the lender's contract remedy "[did] not unreasonably affect the value of the right."[22] The Court reasoned that because reinstatement only alters the ability to accelerate the loan, it "does not reduce the value of a beneficiary's note or the security ensuring payment in any perceptible way."[23] Thus, the Court construed the function of reinstatement as placing the lender and borrower in the same position as they were before the default.

Consistent with this reasoning, the Court recognized the inclusion of foreclosure costs in the "sum in default":

> The right of an obligor to call a halt to a non-judicial foreclosure *by paying costs and by bringing his payments current* carries within it an implied duty on the part of the beneficiary to accept a tender of the *sum in default* and to seasonably advise the obligor on request the amount in default.[24]

Again, the Court noted that the non-judicial foreclosure process stops "where the overdue amount is brought current and costs are paid."[25] The *Hagberg* opinion never specified what constitutes "costs," but it appears the Court contemplated certain costs to be a part of the "sum in default."

While legislative history on the relevant portion of the statute is sparse,[26] the Alaska

---

17. Memorandum in Support of Plaintiff's Motion for Summary Judgment at 7.

18. *Id.* at 8.

19. 585 P.2d 559 (Alaska 1978).

20. The amendment to AS 34.20.070 considered in *Hagberg* added the right of reinstatement to the non-judicial foreclosure statute as it reads today.

21. In *Young v. Embley*, 143 P.3d 936 (Alaska 2006), the Supreme Court interpreted AS 34.20.070(b) only in so far as it related to who (e.g. junior lienholder, senior lienholder, etc.) has the right to cure a default on a deed of trust. In a brief discussion of what the statutory right of cure entails, the *Embley* opinion stated that according to the statute, "foreclosure may be forestalled by payment of arrearages, costs and attorney's fees." *Id.* at 942.

22. *Hagberg*, 585 P.2d at 561.

23. *Id.* at 562.

24. *Id.* (emphasis added).

25. *Id.* at 561–562.

26. Plaintiff contends that the legislative history shows the legislature intended "sum in default" to only include "the amount behind" in mortgage payments. Plaintiff cites the amendment's sponsor, Representative Sullivan, as stating the "bill gives a 30 day grace period, provides a cure of paying the amoun[t] behind plus court and attorney fees." [R. 255 (Exhibit 1 to Plaintiff's Opening Brief in Support of Motion for a Preliminary Injunction, Minutes of the House Judiciary Committee, May 19, 1975, testimony of Representative Sullivan.)] The Court does not find this brief cite of legislative history controlling or that persuasive.

Supreme Court has held that the common law "is an especially important tool" in interpreting AS 34.20.070 as the right of cure is "analogous" to the equitable remedy of redemption.[27] The *Hagberg* opinion confirms that the addition of the right of reinstatement to AS 34.20.070 "does no more than codify a form of relief from forfeiture which courts have often exercised" at equity.[28] At common law, the goal of the Court's equitable discretion to prevent forfeiture was to "save the respective parties harmless from loss or damage and, if just and equitable, place them in the status quo of their contract so as to permit them as vendor and vendee to each have the benefit of their respective bargains."[29] Whether a lender proceeds judicially or non-judicially, a borrower's default is not a cost-free occurrence to the lender. In order to restore the parties, both lender and borrower, to their position before the default—as "if no default had occurred"—the lender, and his beneficiary, must be reimbursed the costs of preparing the property for foreclosure. Only by allowing recovery of these fees will the value of the lender's rights be preserved and the parties returned to their status quo prior to the default. All of this supports construing the term "sum in default" as including the costs of non-judicial foreclosure, other than attorney's fees and court costs, in so far as it is necessary to return the parties to their status quo *ante*.[30] The parties' deed of trust in this case further supports this outcome.

### B. Terms Of The Promissory Note And Deed Of Trust

The note and deed of trust on plaintiff's mortgage govern the parties' interests and obligations with respect to the property. By defaulting on his mortgage payments, plaintiff failed to meet his agreed-upon obligations in the deed of trust. AS 34.20.070 refers to lenders' and borrowers' deed of trust as the source of the lenders' right to pursue non-judicial foreclosure:

> If a deed of trust is executed conveying real property located in the state to a trustee as security for the payment of an indebtedness *and the deed provides* that in case of default or noncompliance with the terms of the trust, the trustee may sell the property for condition broken, the trustee, in addition to the right of foreclosure and sale, may execute the trust by sale of the property, *upon the conditions and in the manner set forth in the deed of trust.* . . .[31]

The legislature also deferred the foreclosure sale to "the terms and conditions and in the manner set out in the deed of trust."[32]

Plaintiff argues that the terms in its deed of trust are not controlling and cannot "subvert or otherwise trump" state law, but fails to address the statute's deference to the conditions in a deed of trust. While plaintiff cites a parallel superior court case, *Bachmeier*, as persuasive authority, Judge Gleason did inquire into the effect of the terms of the deed of trust in that case. From the hearing transcript, it appears the terms in the deed of trust in *Bachmeier* were different than the deed of trust in this action, which specifically delineates the reinstatement amount as including costs of foreclosure not limited to attorney fees.[33] According to this Court's interpretation of AS 34.20.070, the conditions outlined in the deed of trust control non-judicial foreclosure.

Alaska Trustee argues that AS 34.20.070 permits reinstatement only upon payment of the entire sum in default as determined by reference to the parties' contract. The deed of trust plaintiff signed provides that where

27. *Young*, 143 P.3d at 945.

28. *Hagberg*, 585 P.2d at 562.

29. *Moran v. Holman*, 501 P.2d 769, 771 (Alaska 1972) (quoting *Ward v. Union Bond & Trust Co.*, 243 F.2d 476 (9th Cir.1957)).

30. This does not exclude the possibility the parties may narrow their recoverable costs by the terms of their contract, i.e., their deed of trust.

31. AS 34.20.070(a) (emphasis added).

32. AS 34.20.080(a). *See Cook Schuhmann & Groseclose, Inc. v. Brown & Root, Inc.*, 116 P.3d 592, 596 (2005).

33. Exhibit 6 to Certificate of Chelsea Hicks in Support of Plaintiff's Motion for Partial Summary Judgment, pg. 33–35.

the lender elects to non-judicially foreclose upon the deed, the "borrower has a right to be reinstated." [34] Pursuant to the note and deed of trust, plaintiff agreed that in order to reinstate the terms of his loan he would "tender in a lump sum all amounts required to bring [his] account current, including ... foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding." [35] Plaintiff's deed of trust further provides that lender "shall be entitled to collect all expenses incurred in pursuing the remedies provided ... including, but not limited to, reasonable attorney's fees and costs of title evidence." [36]

■ By signing the note and deed of trust, lender and borrower agreed to the terms of the deed of trust and evinced their clear intent to a right of reinstatement conditioned on payment of the costs the lender or its beneficiary incurred pursuing non-judicial foreclosure. Plaintiff contends that even if the note and deed of trust are controlling, the terms of the note specifically limit[ ] the reinstatement fees to those "not prohibited by applicable law," [37] including AS 34.20.070. However, the Court does not find that AS 34.20.070 strictly limits or prohibits costs that are not attorney fees and court costs, but rather contemplates recovery of the costs incident to foreclosure within the sum in default. The Court finds nothing in the statute to preclude enforcement of the parties' agreement.

■ In the alternative, plaintiff contends that, at most, the terms in the deed of trust amount to a contract right defendant can pursue in court after the non-judicial foreclosure. The Court finds this argument unpersuasive. One purpose of non-judicial foreclosure is to minimize or avoid the costs of litigation. In choosing non-judicial foreclo-

sure over judicial foreclosure, the lender forfeits its right to a deficiency judgment. The only financial stake the lender is left with is the amount it can obtain from the foreclosure sale. Interpreting the statute to require the lender or beneficiary to bring a separate lawsuit or a second foreclosure to recover its foreclosure expenses would unreasonably diminish the value of the right. In addition, AS 34.20.070(a) specifically provides that if the lender sues on the note secured by the deed of trust, it may not also exercise non-judicial remedies. Therefore, a separate suit to obtain foreclosure fees and costs after a non-judicial foreclosure is probably not permissible.

C. **[This section deleted because inapplicable to the points on appeal.]**

IV. **CONCLUSION**

The position advocated by the plaintiff is inconsistent with the historical equitable relief available for mortgage indebtedness recognized by the Alaska Supreme Court's decision in *Hagberg,* which emphasized the restoration of the parties to their status quo *ante* default. Plaintiff's position also undermines the utility of non-judicial foreclosure, contrary to the interests of both lenders and borrowers, by incentivizing lenders to pursue deficiency judgments. There has been no claim that any of the costs or fees sought to be recovered by Alaska Trustee are fraudulent or even unreasonable. In light of these considerations, the Court concludes Alaska Trustee's inclusion of foreclosure fees and costs in plaintiff's reinstatement quote, as permitted by the parties' deed of trust, is consistent with Alaska's non-judicial foreclosure statute, AS 34.20.070.

For the reasons set out, plaintiff's motion for summary judgment is DENIED, and defendant Alaska Trustee's cross-motion for summary judgment is GRANTED, dismiss-

34. Deed of Trust, Attachment 2 to the Santiago Affidavit, 10.

35. *Id.*

36. *Id.*

37. Defendant offers the affidavit of Terry Bryan, president of Alaska Land Title Association, to

show that in Alaska it is "the longstanding custom of requiring payment of the foreclosure fees and costs as part of the reinstatement." Exhibit A to Opposition to Motion for Temporary Restraining Order, filed Oct. 16. 2009. While industry custom is not determinative, it is useful to interpreting the parties' reasonable expectations under the deed of trust.

**96**

ing Counts I and III of Plaintiff's Third Amended Complaint.

/s/ Andrew Guidi
Superior Court Judge